UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>PARMJIT (a/k/a PAUL) PARMAR, SOTIRIOS (a/k/a SAM) ZAHARIS, and RAVI CHIVUKULA,<br><br>Defendants. | Hon. Madeline Cox Arleo<br><br>Civ. No. 18-9284-MCA-MAH |

MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION OF THE UNITED STATES FOR LEAVE
TO INTERVENE AND FOR A STAY

CRAIG CARPENITO
United States Attorney
970 Broad Street
Newark, New Jersey 07102
(973) 645-2700

On the Memorandum:
NICHOLAS P. GRIPPO
Assistant United States Attorney

**PRELIMINARY STATEMENT**

The allegations in this civil enforcement action filed by the United States Securities and Exchange Commission ("SEC") (the "SEC Case") against Parmjit (a/k/a Paul) Parmar ("Parmar"), Sotirios (a/k/a Sam) Zaharis, and Ravi Chivukula, substantially overlap with an active criminal case filed in this District against the same defendants and captioned *United States v. Parmjit Parmar, a/k/a "Paul Parmar,"* et al., Mag. No. 18-8040 (LDW) (the "Criminal Case").

The United States of America, through the United States Attorney for the District of New Jersey (the "United States"), moves to (1) intervene in the SEC Case pursuant to Rule 24 of the Federal Rules of Civil Procedure; and (2) stay further proceedings and discovery in the SEC Case in order to preserve the integrity of the investigation and prosecution of the Criminal Case, advance the public interest, and prevent the defendants from circumventing the narrow confines of criminal discovery through broad civil requests and related litigation.

**STATEMENT OF FACTS/PROCEDURAL HISTORY**

On May 16, 2018, the SEC filed a civil complaint (the "SEC Complaint") alleging, among other things, that Parmar, Zaharis and Chivukula orchestrated a scheme to fraudulently induce an entity referred to as "Investor-1," the family office of a high-net worth individual, to acquire Constellation Healthcare Technologies, Inc. ("CHT"), an issuer and medical-billing business then publicly traded on the London Stock Exchange's Alternative Investment Market ("AIM"),

in a "go-private transaction," i.e., a transaction through which a publicly traded company is converted into a private entity. (SEC Complaint, ¶ 1). The SEC Complaint further alleges that the defendants fraudulently induced Investor-1 to enter into the go-private transaction by, among other things, making material misrepresentations to it about CHT's historical and expected future earnings and revenue, including the revenues of three fictitious subsidiaries that did not in fact exist, and CHT's purported customer base, including purported customers of the three fictitious subsidiaries. (*Id.* at ¶ 2).

The SEC Complaint claims that the defendants fabricated and falsified scores of documents that they provided to Investor-1 and professional advisors representing Investor-1, including sham acquisition agreements, financial statements, customer agreements, invoices, and due diligence materials. (*Id.*) The SEC Complaint contains numerous detailed allegations concerning the manner in which the defendants carried out the scheme, including quoting from various emails, agreements, corporate filings, and other documents that the defendants created and exchanged in furtherance of the fraud.

On May 15, 2018, the Honorable Leda D. Wettre, U.S.M.J., signed a nineteen-page criminal complaint charging Parmar, Zaharis, and Chivukula with conspiracy to commit securities fraud, in violation of Title 18, United States Code, Section 371, and securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff (the "Criminal Complaint"). The charges in the Criminal Complaint arise from the same scheme set forth in the SEC Complaint, and both complaints contain similar allegations regarding the

defendants' material misrepresentations and omissions to Investor-1. Like the SEC Complaint, the Criminal Complaint contains numerous detailed allegations and quotes extensively from various documents that demonstrate the defendants' involvement in the fraud. The following day, on May 16, 2018, special agents of the Federal Bureau of Investigation arrested Parmar in connection with the Criminal Complaint. To date, Zaharis and Chivukula have not been arrested and remain fugitives. The defendants have not yet been indicted and the criminal investigation of their involvement in the scheme alleged in the Criminal Complaint remains ongoing.[1]

On August 16, 2018, Parmar filed a motion to dismiss the SEC Complaint. The SEC has not yet filed its opposition to the motion. Parmar's counsel has advised the United States that Parmar would consent to a stay of the SEC Case, but only after the motion to dismiss is decided. However, Parmar's motion to dismiss includes numerous factual allegations that directly relate to issues in the Criminal Case. While Parmar's allegations are meritless, they should be resolved by a jury in the Criminal Case, not litigated on a motion to dismiss the SEC's civil enforcement complaint.

---

[1] As noted in both the Civil and Criminal Complaints, CHT and its affiliated entities filed a Chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the Eastern District of New York due, at least in part, to the alleged fraud that Parmar and his co-conspirators committed. *See In re Orion HealthCorp, Inc.*, No. 18-71748 (AST) (Dkt. 1) (Bankr. E.D.N.Y Mar. 16, 2018). On April 4, 2018, the debtors in that matter filed an adversary proceeding complaint against Parmar, Chivukula, Zaharis, and various others asserting claims based on the same general fraud alleged in the SEC's Civil Complaint and the Criminal Complaint. *Orion HealthCorp. Inc. v. Parmar, et al.*, No. 18-08053 (AST) (Bankr. E.D.N.Y Apr. 4, 2018) (Dkt. 1). Parmar has filed a motion to stay the adversary proceeding pending resolution of the criminal proceedings; that motion currently is pending. (*Id.*, Dkt. 63).

For these and the other reasons set forth below, the Court should stay the SEC Case now pending a disposition of the Criminal Case.

## ARGUMENT

### I. THE UNITED STATES ATTORNEY SHOULD BE PERMITTED TO INTERVENE IN THIS ACTION FOR THE LIMITED PURPOSE OF SEEKING A STAY OF DISCOVERY.

In its present application, the United States seeks to intervene for the limited purpose of staying this matter to protect the integrity of the ongoing investigation and prosecution of the Criminal Case. Under the Federal Rules of Civil Procedure, there are two bases for intervention: intervention as of right pursuant to Rule 24(a), or permissive intervention pursuant to Rule 24(b). The United States' intervention in the SEC Case is supported under both grounds for intervention.

#### A. The United States Is Entitled to Intervention as of Right in this Civil Action.

Federal Rule of Civil Procedure 24(a)(2) provides for intervention as of right as follows, in pertinent part:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

"A potential intervenor must satisfy four criteria to succeed on a motion pursuant to Rule 24(a)(2): '(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be

5

affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.'" *United States v. Terr. of the V.I.*, 748 F.3d 514, 519 (3d Cir. 2014) (quoting *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987) (citation omitted)). "Although these requirements are intertwined, each must be met to intervene as of right." *Harris*, 820 F.2d at 596 (citation omitted).

### 1. The United States' Motion for Intervention is Timely.

The determination of whether a motion to intervene is timely is "determined from all the circumstances and, in the first instance, by the [trial] court in the exercise of its sound discretion." *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 223 F.R.D. 326, 328 (D.N.J. 2004) (citing *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982) (quotations omitted). Courts in the Third Circuit weigh three factors in determining timeliness: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995).

Here, the United States' motion to intervene is timely. The SEC Case was initiated just a few months ago and Parmar only recently filed his motion to dismiss. The Court has not yet set answer deadlines and civil discovery has not yet commenced. The United States' motion to intervene is therefore timely and will cause no delay or prejudice to the parties. *See id.* at 370 (finding no prejudice from a four-year delay in filing intervention motion because, while some written discovery and settlement negotiations had occurred prior to the

motion, there were no depositions taken, dispositive motions filed, or decrees entered during the four-year period).

### 2. The United States Has a Compelling Interest in the Civil Litigation That is Not Adequately Represented by the Existing Parties, and Which May Be Adversely Affected in the Absence of Intervention.

The United States has a substantial interest in the civil litigation that is not sufficiently represented by the existing parties and that may be harmed by the absence of the United States' intervention. Courts have recognized that "[t]he government ha[s] a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the [parallel] criminal matter." *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988) (per curiam); *see also SEC v. Ott*, Civ. No. 06-4195 (GEB), 2006 U.S. Dist. LEXIS 86541, at *6 (D.N.J. Nov. 29, 2006) (Bongiovanni, U.S.M.J.) (finding that "it [wa]s clear that the United States ha[d] a direct and substantial interest in th[e] [SEC civil] litigation, because the ongoing parallel criminal investigation concern[ed] the same business practices, contracts and payments at issue in th[e] [civil] matter"); *SEC v. Dubovoy, et al.*, Civ. No. 15-6076 (MCA) (D.N.J. Jan. 29, 2016) (Hammer, U.S.M.J.) (Dkt. No. 240) (granting United States' motion to intervene and stay SEC case based on same securities fraud scheme charged in criminal indictment, even though some of the defendants in the SEC case were not charged in the criminal indictment and opposed the stay request). This interest is present here, because if not stayed, the SEC Case presumably will proceed to the discovery stage and thus enable Parmar to attempt to extract material from the United States that he would not

otherwise be entitled to at this stage of the Criminal Case.  Moreover, the United States' interest is particularly strong where, as here, the grand jury's investigation is ongoing.  If the SEC Case is not stayed, there is a real possibility that Parmar may try to use the SEC Case to obtain information about the workings of the grand jury process that he is not entitled to under Federal Rule of Criminal Procedure 6(e).

Furthermore, only the United States Attorney can effectively represent these interests in the SEC Case.  The SEC Case and the parallel Criminal Case involve the same defendants, allegedly perpetrating the same fraudulent scheme, involving the same alleged victims and transactions, and carried out over the same time period.  However, "the interests of the SEC in enforcing the provisions of the Securities and Exchange Act of 1934, and of Defendants do not represent those of the United States."  *Ott*, 2006 U.S. Dist. LEXIS 86541, at *6 (citation omitted).  The United States' interests concern safeguarding the criminal investigation and prosecution, matters separate and apart from the SEC's interests in protecting the integrity of financial markets.  *See Nuesse v. Camp*, 385 F.2d 694, 702-04 (D.C. Cir. 1967).  The interests of the litigants in the SEC Case may be adverse to those of the United States to the extent they seek to discover and publicize matters that are the subject of the ongoing criminal investigation; intervention by the United States is necessary, therefore, in order to make sure its interests are adequately represented and protected.

Based on the foregoing, the United States should be granted leave to intervene as of right pursuant to Fed. R. Civ. P. 24(a).

**B.     Alternatively, the United States Should be Granted Permissive Intervention Because There are Common Questions of Law and Fact in this Civil Action and the Pending Criminal Case.**

Federal Rule Civil Procedure 24(b)(1)(B) provides an alternative means for intervention – specifically, permissive intervention – where a party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "It is well-established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or already underway, that involves common questions of law or fact." *SEC v. Downe*, Civ. No. 92-4092 (PKL), 1993 U.S. Dist. LEXIS 753, at *42-43 (S.D.N.Y. Jan. 26, 1993) (citing *Chestman*, 861 F.2d at 50); *Board of Governors of the Federal Reserve Sys. v. Pharaon*, 140 F.R.D. 634, 638 (S.D.N.Y. 1991); *First Merchants Enterprise, Inc. v. Shannon*, No. 88 Civ. 8254 (CSH), 1989 WL 25214 (S.D.N.Y. Mar. 16, 1989); *see also SEC v. One or More Unknown Purchasers of Sec. of Global Indus.*, Civ. No. 11-6500 (RA), 2012 U.S. Dist. LEXIS 162772, at *4 (S.D.N.Y. Nov. 9, 2012). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Here, the civil action and corresponding criminal investigation and prosecution of the defendants arise out of numerous common questions of law and fact related to their alleged involvement in the above-described scheme to

9

defraud.  Moreover, intervention will not cause undue delay or prejudice the parties, particularly since the civil discovery process has not gotten underway.  Accordingly, even if the Court were to find that the United States may not intervene as of right, the Court should exercise its discretion to allow the United States to intervene in this case for the limited purpose of moving for a stay.

II. **A STAY OF THE SEC CASE IS NECESSARY TO PROTECT THE INTEGRITY OF THE ONGOING CRIMINAL INVESTIGATION AND PROSECUTION.**

   A. **The Court Has the Authority to Issue a Stay.**

The United States seeks to intervene for the limited, and authorized, purpose of staying this matter.  Courts have the inherent authority to stay proceedings in a civil case in the interests of justice when a parallel criminal prosecution is underway.  *See SEC v. HealthSouth Corp.*, 261 F. Supp. 2d 1298, 1326 (N.D. Ala. 2003); *RAD Services, Inc. v. Aetna Casualty & Surety Co.*, 808 F.2d 271, 279 n.3 (3d Cir. 1986); *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970); *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).  It is "clearly within the power of the district court to balance 'competing interests' and decide that judicial economy would best be served by a stay of civil proceedings."  *United States v. Mellon Bank, N. A.*, 545 F.2d 869, 872-873 (3d Cir. 1976) (quoting *Texaco, Inc. v. Borda*, 383 F.2d 607, 609 (3d Cir. 1967)).

Factors that courts have considered in weighing whether a stay is warranted include the extent to which the criminal and civil cases overlap, the interests of the public in the pending civil and criminal litigation, the potential

10

prejudice to the civil parties of delaying their litigation, the interests of the court, and the status of the criminal case.  *See Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324–25 (9th Cir. 1995); *HealthSouth*, 261 F. Supp. 2d at 1326; *Walsh Sec. v. Cristo Prop. Mgmt.*, 7 F. Supp. 2d 523, 526-27 (D.N.J. 1998).  These factors counsel in favor of a stay in this case.

    **B.**    **The Criminal and Civil Matters Overlap.**

There is significant overlap between the ongoing criminal investigation and prosecution, and the civil litigation pending before the Court. They involve the same defendants (although Parmar is the only defendant at this point who is not a fugitive) and the same scheme to defraud Investor-1 in connection with the go-private transaction.  Furthermore, many of the potential witnesses in the Criminal Case also are potential witnesses in the SEC Case.

    **C.**    **The Public Interest Favors a Stay.**

        **1. The Court Should Stay this Case Before Deciding Parmar's Fact-Intensive Motion to Dismiss.**

Parmar's motion to dismiss raises a number of factual issues that counsel in favor of staying the SEC Case now, prior to deciding the motion. Indeed, Parmar's motion is not simply a challenge to the sufficiency of the fraud allegations in SEC Complaint but, rather, challenges the merits of the SEC's claims.  The motion includes a host of factual allegations that appear to go to the heart of Parmar's defenses.  For example, Parmar claims that the principal of the alleged victim of his fraud, Investor-1, was the real wrongdoer and that he "conspired to purchase a controlling interest in a public company at half its actual value and take it private" and "then orchestrated a fraudulent

11

bankruptcy filing so that he could use straw purchasers to buy that company out of bankruptcy at a fraction of the cost, with 100% equity and debt free, while leaving the investors and banks with uncollectible debts." (Def. Mot. at 2).

Parmar's motion contains numerous other factual claims that relate to the transactions and parties involved in the Criminal Case. Opposing Parmar's motion may require certain factual responses by the SEC that likely would implicate matters at issue in the Criminal Case. Even though Parmar's allegations have no merit, they nonetheless are fact-sensitive and should not be litigated in this preliminary phase of the SEC Case while Parmar faces parallel criminal charges related to the same events and fraudulent conduct. Rather, these issues first should be tried and resolved by a jury in the Criminal Case.

Accordingly, a stay of this case at this time would "benefit the public by allowing the Government to conduct a complete, unimpeded investigation into potential criminal activity." *Walsh Sec.*, 7 F. Supp. 2d at 529.

### 2. Criminal Discovery is Limited and Not Available Before Indictment.

The Court also should stay the SEC Case so that Parmar cannot use civil discovery as an end-run around the more limited criminal discovery rules. "Criminal pretrial discovery is, of course, vastly different from discovery in civil cases." *United States v. Ramos*, 27 F.3d 65, 67 (3d Cir. 1994). Criminal discovery is purposely more limited than its civil counterpart. *Id.* at 68 ("In contrast to the wide-ranging discovery permitted in civil cases, Rule 16 of the

12

Federal Rules of Criminal Procedure delineates the categories of information to which defendants are entitled in pretrial discovery in criminal cases . . . .").

Prior to indictment, there is no right to discovery. Criminal investigations usually involve grand jury proceedings, and the Supreme Court has consistently recognized that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 (1979). Preserving the secrecy of grand jury proceedings encourages witnesses to come forward and testify freely and honestly, minimizes the risks that prospective defendants will flee or use corrupt means to thwart investigations, safeguards the grand jurors themselves and the proceedings from extraneous pressures and influences, and shields from unfavorable publicity accused persons who are ultimately exonerated. *Id.* at 219. Even after indictment, criminal discovery is confined. *See Chestman*, 861 F.2d at 50. Depositions, for example, are routine in civil cases but rarely permitted and cannot be used as a means of discovery in criminal cases. *See* Fed. R. Crim. P. 15; *United States v. Steele*, 685 F.2d 793, 809 (3d Cir. 1982). Also, the United States is not required to produce statements of its witnesses until after those witnesses have testified on direct examination. *See* 18 U.S.C. § 3500; Fed. R. Crim. P. 16(a)(2).

A stay of discovery in this matter is appropriate so as to prevent Parmar from utilizing the expansive civil discovery rules to obtain discovery that he otherwise would not be entitled to under the narrow rules of criminal discovery. As the Third Circuit explained in *Mellon Bank*, a civil litigant should not be

13

permitted to proceed simultaneously with an overlapping criminal investigation, because "the similarity of the issues [leaves] open the possibility that [the target] might improperly exploit civil discovery for the advancement of his criminal case." 545 F.2d at 873. The possibility of improper use of discovery, in part, led the district court in *Mellon Bank* to stay discovery, *Id.*, and the Court of Appeals for the Third Circuit affirmed, *Id.* at 874. The concern expressed in *Mellon Bank* that criminal discovery limitations not be circumvented has been echoed by many courts that have stayed civil discovery in parallel proceedings.

> For example, in *Campbell v. Eastland,* the Fifth Circuit stated:
>
> A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit. Judicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other. In some situations it may be appropriate to stay the civil proceeding. In others it may be preferable for the civil suit to proceed – unstayed. In the proper case the trial judge should use his discretion to narrow the range of discovery.

307 F.2d 478, 487 (5th Cir. 1962) (internal citation omitted).

Courts around the country, including in this District, have relied on similar logic to stay civil discovery while criminal proceedings are ongoing. *See Ott*, 2006 U.S. Dist. LEXIS 86541, at *3-10; *United States v. GAF Financial Services*, 335 F. Supp. 2d 1371, 1373 (S.D. Fla. 2004) (civil forfeiture stayed pursuant to 18 U.S.C. § 981(g)); *Downe*, 1993 WL 22126, at *12–14; *In re Ivan*

*F. Boesky Securities Litigation*, 128 F.R.D. 47, 49-50 (S.D.N.Y. 1989); *United States v. Hugo Key & Son, Inc.*, 672 F. Supp. 656, 657-59 (D.R.I. 1987); *Founding Church of Scientology v. Kelley*, 77 F.R.D. 378, 380-81 (D.D.C. 1977); *SEC v. Control Metals Corp.*, 57 F.R.D. 56, 57-58 (S.D.N.Y. 1972). The United States does not have to demonstrate that any particular defendant already has unfairly taken advantage of the civil discovery provisions to the detriment of the United States or the public. Rather, it is presumed that criminal defendants and targets will make full use of such an unsurpassed opportunity to harm the Government's criminal case. *See Integrated Generics, Inc. v. Bowen*, 678 F. Supp. 1004, 1009 (E.D.N.Y. 1988) (no need to find wrongful intent). Courts have recognized the unfair advantages inherent in civil discovery opportunities and have, accordingly, stayed discovery. *See, e.g., Control Metals Corp.*, 57 F.R.D. at 57 (staying depositions of four grand jury witnesses).

In the present case, given the overlap of witnesses and issues in the SEC Case and the Criminal Case and ongoing investigation, interrogatories and deposition notices in the SEC Case could result in witness intimidation, perjury or manufactured evidence. *Eastland*, 307 F.2d at 487 n.12. Even if the defendant here "possessed the purest of motives," allowing civil discovery to go forward would make him "the beneficiary of materials otherwise unavailable to him under the criminal rules . . . thus nullifying in effect the criminal

discovery limitations." *In re Eisenberg*, 654 F.2d 1107, 1113-14 (5th Cir. 1981).[2]

### D. The Public's Interest in Allowing the Criminal Case to Be Completed Without Interference Outweighs the Minimal Prejudice to the Defendant From a Stay.

The public's significant interest in allowing the Criminal Case to run its course must be balanced against a civil litigant's interest in a final resolution of its case. All litigants, of course, have an interest in the swift resolution of their claims and defenses. The United States is mindful that neither the Court, the SEC, nor the defendant wants this case to be delayed unnecessarily.

Nonetheless, disposing of the SEC Case expeditiously, including the pending motion to dismiss, does not outweigh the importance of conducting an unimpeded criminal investigation and prosecution. This is especially true where a stay until the completion of any trial in the Criminal Case will cause little to no particularized harm to the public, the SEC, or to the defendant, and even could benefit the defendant. Parmar has recognized as much in his

---

[2] For example, if an indictment were presented to the grand jury in this matter, the defendant would not be entitled through civil discovery to obtain transcripts of grand jury testimony. *See Douglas Oil*, 441 U.S. at 222-23. However, the defense could depose witnesses in the SEC Case, ask them if they testified before the grand jury, and, if they did, ask them to repeat their grand jury testimony, thereby subverting the purposes of grand jury secrecy. Civil depositions would be taken with an eye toward developing impeachment material against the Government's criminal trial witnesses, a tool that is normally not available to criminal defendants. *See Downe*, 1993 WL 22126, at *13 ("[W]here a party or witness in a civil case is cooperating with a grand jury investigation relating to the subject matter of the civil suit, there is a compelling reason to stay discovery of the civil case pending resolution of the criminal investigation."); *Hugo Key*, 672 F. Supp. at 658 ("[I]t cannot be doubted that the discovery of the identity of confidential government informants would provide an opportunity for the intimidation of prospective witnesses. This possible result would not only harm the interests of the United States in the present case, but might also discourage individuals from providing information to the government in the future.").

motion to stay the adversary proceeding pending in Bankruptcy Court, in which he argued:

> Absent a stay, Parmar would be left in a terrible predicament – either invoke the Fifth Amendment and allow an adverse inference to be drawn against him; thus, leaving himself at a significant disadvantage in the Adversary Proceeding; or to testify in the Adversary Proceeding and thereby waive his right to invoke the Fifth Amendment. Parmar's defense is entirely based on his own testimony, including his explanation of transactions and documents cited to in the [Adversary] Complaint. Accordingly, the private interests of Parmar are considerable and weigh heavily in favor of granting a stay[.]
>
> [Parmar Motion to Stay Adversary Proceeding, No. 18-08053 (Bankr. E.D.N.Y) (Dkt. 63, at 5).

### E. **A Stay Would Likely Narrow the Issues in the SEC Case.**

Finally, a stay would also benefit the public interest by potentially resulting in a narrowing (or elimination) of the issues to be decided in the SEC Case. *See In re Grand Jury Proceedings (Williams)*, 995 F.2d 1013, 1018 n.11 (11th Cir. 1993) ("Although stays delay civil proceedings, they may prove useful as the criminal process may determine and narrow the remaining civil issues."); *Texaco Inc.*, 383 F.2d at 609 (Third Circuit affirmed the district court's decision to stay the civil action in part because of its determination that "the trial of the criminal case [might] reduce the scope of discovery in the civil action . . . [a]nd . . . perhaps might also simplify the issues"); *Brock v. Tolkow*, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) ("[T]he resolution of the criminal case might reduce the scope of discovery in the civil case or otherwise simplify the issues."). For example, if the Criminal Case results in guilty verdicts against a defendant or defendants, the higher burden of proof in the criminal matter will

mean that the jury's findings will have preclusive effect in the SEC Case. Likewise, if the Criminal Case results in a guilty plea by any defendant, that defendant's admissions will undoubtedly narrow, and perhaps eliminate, the issues to be decided against him in the SEC case. In either case, there would likely be little left to litigate civilly after a successful criminal prosecution.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court grant it leave to intervene in the SEC Case and order a stay of the SEC Case until the conclusion of the Criminal Case.

Respectfully submitted,
CRAIG CARPENITO
United States Attorney

By: *s/Nicholas P. Grippo*
NICHOLAS P. GRIPPO
Assistant United States Attorney

Dated: Newark, New Jersey
August 31, 2018