```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY

SECURITIES AND EXCHANGE           .
COMMISSION,                       .
                                  .
          Plaintiff,              .   Case No. 18-cv-09284
                                  .
vs.                               .   Newark, New Jersey
                                  .   March 4, 2019
PARMJIT PARMAR, et al.,           .
                                  .
          Defendants.             .
```

                        TRANSCRIPT OF HEARING
                BEFORE THE HONORABLE MICHAEL A. HAMMER
                    UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:    JOHN O'DONNELL ENRIGHT, ESQ.
                       U.S. Securities and Exchange
                       Commission
                       200 Vesey St.
                       New York, NY 10281-1022
                       (212) 336-9138
                       enrightj@sec.gov


For the Intervenor     NICHOLAS PAUL GRIPPO, ESQ.
United States:         Office of the U.S. Attorney
                       District of New Jersey
                       970 Broad Street
                       Newark, NJ 07102
                       (973) 645-2700
                       nicholas.grippo@usdoj.gov

                       Also present: Leslie Lehnert
                       (Department of Justice), and
                       Katherine Murphy, (U.S. Attorney's
                       Office)


Audio Operator:

Transcription Service:    KING TRANSCRIPTION SERVICES
                          3 South Corporate Drive, Suite 203
                          Riverdale, NJ  07457
                          (973) 237-6080


Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

```
 1   (APPEARANCES continued)

 2   For the Defendants:      TIMOTHY CHARLES PARLATORE, ESQ.
                              Parlatore Law Group
 3                            One Bridge Plaza, Suite 275
                              Fort Lee, NJ 07024
 4                            (212) 679-6312
                              timothy.parlatore@parlatorelawgroup.
 5                            com

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              (Commencement of proceedings at 11:24 A.M.)

2

3          THE COURT:  All right.  We are on the record in the

4    United States Securities and Exchange Commission versus

5    Parmjit Parmar, et al., Civil No. 18-9284.  We're here for

6    oral argument on the Government's motion to stay the civil

7    case pending adjudication of the criminal charges.  The

8    criminal charges are -- well, let's start with appearances of

9    counsel, please, beginning with the plaintiff.

10          MR. ENRIGHT:  Good morning, Your Honor.  John

11   Enright on behalf of the Securities and Exchange Commission.

12          THE COURT:  All right.  And for the defense?

13          MR. PARLATORE:  Good morning, Your Honor.  Tim

14   Parlatore on behalf of Mr. Parmar.

15          THE COURT:  All right.

16          MR. GRIPPO:  Good morning, Your Honor.  Nicholas

17   Grippo, United States attorney on behalf of the United

18   States, the intervenor -- or proposed intervenor here.  With

19   me at counsel table is Leslie Lehnert from the Money

20   Laundering and Asset Discovery Section of the Department of

21   Justice, and Katherine Murphy, who's an AUSA at the U.S.

22   Attorney's Office.  Ms. Murphy and Ms. Lehnert are counsel of

23   record in the parallel criminal case.  They have not yet

24   entered an appearance in this case, but they're appearing

25   with me on behalf of the Government.

1          THE COURT:  All right.  So the first item of

2    business is the Government's motion to intervene.  I did not

3    understand the defense to be opposing the intervention motion

4    as much as the stay motion.

5          Is that correct?

6          MR. PARLATORE:  Correct, Judge.  Really to narrow

7    it even further, it's more just the timing of when the stay

8    will go into effect.

9          THE COURT:  No, I understand.  We're going to get

10   to that.  We're going to cover that.

11         MR. PARLATORE:  So -- yes.

12         THE COURT:  Let me just get on the -- deal with the

13   intervention first.

14         I also agree that under Fed. R. Civ. P. 24, that

15   the Government -- the Government's motion to intervene should

16   be granted.  Under Rule 24(a)(2), a potential intervenor has

17   four criteria that they must satisfy:  One, the application

18   to intervene must be timely; two, there must be a sufficient

19   interest by the intervenor in the litigation; three, that

20   interest must be subject to being impaired or affected by

21   disposition of the matter sub judice; and, four, the

22   interests of the intervening party are not adequately

23   protected by the present litigants.  See United States v.

24   Territories of the Virgin Islands, 748 F.3d 514 at 519 (3d

25   Cir. 2014).

1          In this case, the Court is satisfied, one, that the

2    application to intervene is timely; second, that the

3    Government does have a sufficient interest which could be

4    impaired or affected by the current civil litigation -- of

5    course, I make that observation -- or that conclusion on the

6    motion to intervene, not on the stay issue, which we'll

7    address in a motion.  It is at least -- it's possible that

8    the -- the Government obviously has an interest and the

9    public has an interest in the effective investigation and

10   enforcement of federal law, which could be impaired or

11   affected as a practical matter by disposition of the civil

12   case.  Moreover, the Court accepts the Government's

13   representation that the present litigants are not capable of

14   adequately representing the Government's interests in the

15   criminal case insofar as the SEC is a civil litigant in this

16   matter.

17         So for those reasons and given the fact that the

18   defense does not object to the motion to intervene, that

19   application is granted.

20         We can now turn to the stay.  At this point, who's

21   going to be arguing the stay issue for the Government?

22         MR. GRIPPO:  Your Honor, I will be.

23         THE COURT:  Mr. Grippo?

24         MR. GRIPPO:  Yes.

25         THE COURT:  Okay.  So let's tee up first sort of

```
 1   where we are and exactly what is at issue.  And this is
 2   something, I think, that Mr. Parlatore touched on briefly
 3   before.
 4            So the civil case has been filed, and it's pending.
 5   Nothing other than this motion and the -- a motion to dismiss
 6   filed by Mr. Parmar has been filed.  There's been no
 7   discovery.  And, importantly, I think, because this certainly
 8   factors into the defendant's argument, there's no -- the
 9   defense does not oppose the motion to stay, because the
10   defense is seeking discovery.  If I understand correctly, the
11   sole issue is whether to stay the case entirely or whether to
12   allow the case to proceed for the relatively narrow purpose
13   of allowing the defense to proceed with the motion to
14   dismiss.
15            There are criminal charges that are pending against
16   Mr. Parmar; also the co-defendants.  They were filed in May
17   2018.  And I don't -- I did not get the sense from the
18   parties' papers that there's much dispute about the
19   similarity of factual issues or factual allegations, at
20   least -- and to some extent, perhaps, legal issues between
21   the criminal complaint and the civil matter.
22            MR. PARLATORE:  I agree with everything you just
23   said there.
24            THE COURT:  Right.  And since it's the Government's
25   motion -- and obvious I'll be hearing from Mr. Parlatore in a
```

1   moment.

2          Mr. Grippo, given that all the defense wants to do

3   is be heard on the motion to dismiss and

4   Fed. R. Civ. P. 12(b)(6), a motion to dismiss by definition

5   tests only the sufficiency of the pleadings -- I also know

6   there's a 9(b) component to that.  But all, really,

7   Fed. R. Civ. P. 9(b) is the enhenlightened -- or is the

8   heightened pleading standard.  So we have Fed. R. Civ. P. 8,

9   which generally governs pleadings and the sufficiency of

10  pleadings before the Court except when it comes to fraud,

11  which, of course, is governed by the particularity

12  requirements of Fed. R. Civ. P. 9(b).

13         If all the defense is arguing is, Judge, we should

14  be allowed to proceed with this case for the limited purpose

15  of being heard on whether the complaint, in its pled -- in

16  its current pleading form states a viable -- a recognizable

17  cause of action and that we, the defendants, are not seeking

18  any discovery in this case, nor will the motion trigger the

19  need for discovery, why should I grant the stay?  Much of the

20  briefing, at least on the Government's side, talks about the

21  Walsh factors, one, where the court really there limited its

22  analysis to -- or there was concern solely with

23  interrogatories and depositions.

24         That's not at issue here.

25         So how will the motion to dismiss, limited as it is

1    to the sufficiency of the pleadings, imperil the Government's

2    criminal investigation?

3              MR. GRIPPO:  Thank you, Your Honor.

4              Your Honor, before answering that question, just

5    one additional update.  The Court laid out the factual and

6    procedural background.

7              The case has now indicted Mr. Parmar and the

8    defendants on a criminal complaint and one additional

9    defendant, Pavandeep Bakhshi, were indicted by a grand jury

10   in December.

11             THE COURT:  Okay.

12             MR. GRIPPO:  So that is an update on the procedural

13   status.

14             And that favors the stay motion.

15             But focusing on the Court's question --

16             THE COURT:  Well, it does and it doesn't, though.

17   Right?  I mean, to the extent -- again, it's important to

18   sort of segregate out what would happen if I deny the stay,

19   what won't happen if I deny the stay.

20             What would happen is -- well, what wouldn't happen

21   is there would be no discovery still.  And so the Fifth

22   Amendment concerns that, for example, Judge Bassler talked

23   about in Walsh still wouldn't obtain, you know -- the

24   interesting thing is in Walsh, it was the defense that was

25   looking for the -- the individuals who were on the receiving

1    end of the criminal charges who were looking for the stay.

2    It wasn't the Government.  Right?

3              MR. GRIPPO:  Yes, Your Honor.

4              THE COURT:  And their concerns there were,

5    essentially, if we're required to go forward, you're going

6    to -- you, Judge, are going put us in this tenuous position

7    that (A) in answering interrogatories, we may have a dispute

8    over Fifth Amendment privilege issues, and, in fact, Judge

9    Bassler noted in an aside, even during the oral argument, it

10   became evident to the court that there were going to be

11   privilege disputes that the court would then have to rule on;

12   certainly in depositions.

13             But I still don't -- even though the case is now

14   indicted, the criminal case is, I'm still not sure that I see

15   how -- certainly, it doesn't give rise to the defendant's

16   Fifth Amendment concerns, and, if so, they want to proceed.

17             How does it imperil the Government's criminal

18   investigation?

19             MR. GRIPPO:  Your Honor, let me answer that

20   question, because we are here on one very narrow issue.  This

21   motion to dismiss is not a typical motion to dismiss that the

22   Court has likely seen and become familiar with in the context

23   of Rule 12(b)(6).

24             This is a highly intensive, fact-intensive

25   motion --

1          THE COURT:  Sorry.  I'm not trying to block you as

2    much as just pull up --

3          MR. GRIPPO:  Understood, Your Honor.  Understood.

4          THE COURT:  -- the motion.

5          Go ahead.

6          MR. GRIPPO:  The motion to dismiss is a

7    fact-intensive -- is a fact-intensive response by the

8    defendant that includes a number of wide-ranging allegations

9    and theories we believe are at the heart of the defendant's

10   defenses in the criminal case.  And although the SEC can

11   reply on its pleadings in responding, the SEC may also feel

12   compelled to respond to some of the very fact-intensive and,

13   in our view, completely meritless allegations of the

14   defendant.  But they are the same allegations that we are --

15   have heard and will likely face in the criminal case.

16          And we think there are two compelling reasons to

17   deny -- or to grant -- excuse me -- the Government's motion.

18   One is, as a matter of public policy, courts favor the

19   criminal proceeding over the civil proceeding when there are

20   competing interests.  And we believe there are competing

21   interests here, because allowing the SEC's pleading to be

22   litigated in the manner in which the defendant has presented

23   it, will involve, we believe, at least some fact-intensive

24   litigation.

25          And, Your Honor, we think that allowing the

1    criminal case to proceed first would resolve many, if not all

2    of the issues that are pending in the SEC case.

3              But also, Your Honor, as a matter of judicial

4    efficiency and efficiency for the parties, it makes little

5    sense to us to have a court spent the time reviewing the SEC

6    complaint and reviewing Mr. Parmar's allegations and

7    responses, when all of those issues are going to be first

8    decided in the criminal case before a jury or even before the

9    Court.

10             So as just a matter of efficiency and preserving

11   the resources of the Court and the parties, we believe a stay

12   is in everyone's interest.

13             And last, Your Honor, we cannot think of a form of

14   prejudice to the defendant -- and Mr. Parlatore has not

15   offered any argument on prejudice -- to allowing the criminal

16   case to proceed first and freezing the SEC case in its

17   current status.  Nothing else will happen.  The complaint

18   will remain pending.  And there's just no harm to Mr. Parmar,

19   who is indicted now and will be focusing -- and rightly so --

20   on a criminal case which is active and is currently pending

21   before Judge Arleo.

22             We do not have a trial date in that case,

23   Your Honor --

24             THE COURT:  I'm sorry.  Did you say the indictment

25   is also signed by Judge Arleo?

1              MR. GRIPPO:  Yes.

2              THE COURT:  Okay.  Let me ask you this.  What is

3    the relationship between the many exhibits filed by the

4    defense as part of their motion, which isn't really a motion

5    to dismiss at all; it's more like a Rule 12(c) except for the

6    fact that there's been no answer filed.

7              What is the relationship between those documents

8    and the allegations in the complaint?  Because on the one

9    hand, you're right, the -- it's not a typical motion to

10   dismiss in the sense that it's a legal argument that

11   basically argues that the pleadings in the complaint, even

12   taken as true, nonetheless are insufficient to state a

13   viable -- or cognizable cause of action and where, as here,

14   the Court is also then being called upon -- or possibly being

15   called upon to interpret and apply numerous documents, some

16   of which are north of a hundred pages in length, goes beyond

17   the parameters of a Rule 12(b)(6) motion.

18             On the other hand, under Rule 12(c), the Court may

19   consider matters outside the pleadings to the extent the

20   pleadings incorporate them.

21             So what are -- what is the relationship between

22   these many exhibits and the pending motion -- or the

23   allegations in the complaint?

24             MR. GRIPPO:  Your Honor, it's our understanding

25   that the exhibits support or purport to support the

1    defendant's arguments that there's no fraud here.  Those

2    exhibits, according to the defendant, exonerate him on the

3    underlying civil fraud claims and the criminal claims.

4         And although the Court can confine its analysis to

5    the pleadings, that is not what Mr. Parmar is asking the

6    Court to do.  He's launching into the merits of the

7    underlying allegations.  Those allegations overlap almost

8    completely with the allegations in the indictment.  And he's

9    asking -- or at least attempting to get into the merits of

10   the underlying claims.  And that is what we're concerned

11   about only because as a matter of efficiency and process, we

12   believe that those claims and those arguments should be heard

13   in the criminal case.  Mr. Parmar is certainly entitled to

14   put on a defense.  But we're not attempting to limit that in

15   any way in the criminal case.  This is solely a matter of

16   process and prioritizing the active indicted criminal case

17   over the civil litigation.

18        THE COURT:  So let me ask you this.  I'm sure

19   you've had an opportunity to consider the -- to closely study

20   the defendant's motion to dismiss.

21        How, in your best estimate, would you see that

22   playing out terms litigating that motion?  Would the parties

23   be limited to -- or would some -- any discovery be required

24   in order to argue the veracity or not of the defendant's

25   arguments to the extent they rely on the exhibits?

|Hearing
|18-cv-09284, March 4, 2019

```
 1              MR. GRIPPO:  Your Honor, I don't -- I do not want
 2  to speak on behalf of the SEC, who would be litigating that
 3  motion.
 4              But I certainly could envision the SEC feeling
 5  compelled to respond to some of the fact-sensitive
 6  allegations.  Whether that leads to some limited discovery, I
 7  don't -- I'm not in a position to say --
 8              THE COURT:  Okay.
 9              MR. GRIPPO:  -- because the SEC may --
10              THE COURT:  Okay.  Let me put that to the SEC.
11              MR. ENRIGHT:  Judge, sitting here today, I don't
12  believe we would need discovery to adequately oppose the
13  defendant's motion to dismiss.
14              THE COURT:  Okay.  So -- because there are very
15  substantial exhibits.  Are these all exhibits that were
16  incorporated into the Government's complaint?  Or are you
17  arguing that the Court itself would need to consider those
18  exhibits in considering the motion to dismiss?
19              MR. ENRIGHT:  The latter, Your Honor.
20              THE COURT:  Okay.  All right.  Thank you.  I
21  appreciate that.
22              Anything else from you, Mr. Grippo?  I mean, I'll
23  give you an opportunity to respond after Mr. Parlatore's
24  argued.
25              MR. GRIPPO:  I think that's it, Your Honor.  I'll
```

1    just reserve the opportunity to respond --

2              THE COURT:  All right.

3              MR. GRIPPO:  -- as Your Honor noted.  But thank

4    you.

5              THE COURT:  All right.

6              So, Mr. Parlatore, I have to -- I have to admit, I

7    do agree with Mr. Grippo that this is far from your ordinary

8    Rule 12(b)(6).  You've -- you're asking the Court to consider

9    hundreds of pages of documents and exhibits that include a

10   number of emails, prior motions, documents that were

11   purportedly exchanged, you know, during the efforts by the --

12   or during the alleged efforts by the defendants to have the

13   private investment firm provide funding and representations

14   that were made to them during that period.

15             Why does it make sense for the Court to delve into

16   all of these matters that go beyond just the four corners of

17   the complaint, given the case has been charged, it's actually

18   now indicted, as opposed to waiting until after the criminal

19   case has run its course.

20             MR. PARLATORE:  Your Honor, our position is that

21   all of the exhibits there are part of the due diligence

22   materials, which were incorporated by reference into the

23   complaint.  The underlying facts of this case relate to a

24   publicly traded company that was taken private.  And the

25   allegation is that the value was inflated and false

1    information was provided.

2            And while the complaint relies upon all the due

3    diligence materials incorporating those, they then

4    selectively quote from just a couple of spreadsheets and

5    models from very early on without considering the totality of

6    all of the true data that was supplied.

7            So, therefore, my client's position is that under

8    12(b)(6) that -- that when you consider all of the documents

9    that are referenced and incorporated by reference in the

10   complaint, that it's insufficient.  You know, the -- what

11   they're saying can't be.

12           Now, we filed that motion, you know, within the

13   required period of time, and we -- Mr. Parmar does not want

14   to have all of these cases hanging out there.  There was no

15   need for the SEC to file this case but for the -- of course

16   the joint press release at the beginning of the case.  The

17   fact that they wanted to put this out at the beginning as

18   well as a related in rem civil forfeiture proceeding, they

19   put all these out there at the same time.  Mr. Parmar has the

20   right to defend himself in all three of these cases.  The

21   SEC's civil complaint and the in rem civil forfeiture

22   complaint, motions to dismiss have been filed in both of

23   those cases.

24           One thing that I would like to address related to

25   the fact that the case has now been indicted, that actually

|Hearing
|18-cv-09284, March 4, 2019

1    goes against the Government's application here because when

2    initially this motion was made, there was discussion about if

3    due diligence materials were -- that were incorporated by

4    reference are put into the motion to dismiss, the SEC may

5    want to respond with additional due diligence materials,

6    which wouldn't be subject to discovery yet, as it was

7    unindicted.

8            At this point, Mr. Parmar's been indicted.  So any

9    documents that the SEC would choose to put in their response

10   saying this was also incorporated by reference into the

11   complaint is something the Government should have already

12   given us anyway.  So there's -- there's no issues whatever

13   about this case in any way impacting discovery or anything

14   else in the criminal case.

15           The problem is -- and the reason why the -- this

16   and the in rem civil forfeiture case should be litigated at

17   this point is that we have two civil complaints and a

18   criminal indictment that allege wrongdoing against Mr. Parmar

19   that's just not supported.  So he does have the absolute

20   right to move to dismiss these at this time.

21           One thing that Your Honor should be aware of is

22   that the related in rem civil forfeiture case where they did

23   file special interrogatories and there has been discussion

24   over whether that should stay the motion to dismiss, we just

25   had a conference call with Magistrate Wettre last week to try

1    figure out that issue.  I've been talking with AUSA Sarah

2    Devlin in the interim.  I -- I'm hopeful that we've figured

3    out that issue.

4           And Magistrate Aster at that time, if you guys

5    figure out the special interrogatory issue, does the

6    Government intend to respond to the motion to dismiss? which

7    raises substantially identical issues to this one here, and

8    AUSA Devlin said yes.

9           So they have no problem responding to a

10   substantially identical motion to dismiss in that case.  But

11   here they're saying that they would be, you know, somehow

12   prejudiced when the reality is this complaint, when

13   considering what the due diligence materials that they

14   referenced, is completely insufficient.

15          I recognize that the volume of exhibits is

16   significant.  This is a case that the due diligence process,

17   went from, I think, April through January.  So it was a very

18   long period of time.  The -- the entity that was then

19   identified as the victim in this, which, I guess, they're not

20   the victim anymore, due to the corporate victim disclosure,

21   they spent over $7 million on the due diligence process.  So,

22   yes, this is a case where due diligence materials is a

23   substantial amount of documentation.  But those are the

24   documents that they cited.  Those are the documents that they

25   incorporated by reference.

|Hearing
|18-cv-09284, March 4, 2019

1          And in the complaint, when trying to lay out with

2     specificity what they're required to prove, instead of going

3     with the actual financial documents that were provided much

4     later in the due diligence, they instead took a couple of

5     selective quotes from models that were provided very early in

6     the complaint.

7          THE COURT:  The concern that I have -- frankly, if

8     it were just a straightforward motion to dismiss that relied

9     solely on the four corners of the SEC's complaint, I don't

10    think it would be much of a difficult decision at all in

11    terms of denying the motion to stay.  I am not even sure at

12    that point the Government would be opposing the motion.

13         But you're asking the Court here, essentially --

14    aren't you basically asking the Court with your -- as I read

15    your opposition -- to essentially make a decision now that --

16    in light of those materials, make a decision that requires

17    the Court to ascertain fraudulent intent and issues such as

18    materiality?  And I don't know how the Court is possibly in a

19    position to do, particularly on a Rule 12(b)(6) motion.

20         MR. PARLATORE:  I disagree with that, Judge.  I

21    think --

22         THE COURT:  Moreover -- let me just give you --

23    just to complete the thought.

24         Under Rule 12(d), to the extent that the Court

25    considers matters outside the pleadings, the Court then has

1  to convert the motion -- the Court's faced with a choice

2  then:  Either exclude those exhibits or convert the motion to

3  a summary judgment.  And if it's the latter, doesn't that run

4  the risk, as the Government had said, of inconsistent

5  judgments?

6          MR. PARLATORE:  If the Court did that.

7          However, our motion to dismiss was very narrowly

8  tailored to just incorporated documents that were

9  incorporated by reference in the complaint.

10         So we would oppose --

11         THE COURT:  But here's my concern --

12     (Simultaneous conversation)

13         MR. PARLATORE:  -- our position is that that

14  wouldn't --

15     (Simultaneous conversation)

16         THE COURT:  Here's my concern.  You want the Court,

17  though, to read those and then essentially evaluate whether

18  there was fraud, whether there was fraudulent intent.  I

19  mean, otherwise, I don't know why -- your argument

20  essentially is -- it's almost a rule of completeness

21  argument, isn't it?  It's a -- when the Government -- when

22  the Government pled X in the complaint and referenced, for

23  example, you know, this particular email, then we told you

24  part of the story.  And so, Judge, you should read the rest

25  of the email and make the decision that that "rest of the

1    story" part that the Government didn't quote in the complaint

2    thereby shows there was no fraudulent intent.

3            And I don't know how the Court possibly does that

4    on a motion to dismiss.  That's not the purpose of a motion

5    to dismiss at all.

6            MR. PARLATORE:  If I may, Your Honor.

7            THE COURT:  Yeah.

8            MR. PARLATORE:  I think that may be -- as much as

9    my client may like the Court to delve into all those merits

10   at this point, I think that the standard of a motion to

11   dismiss is at -- lower than that where we've got a situation

12   where the due diligence materials shows that there wasn't any

13   fraud.  But in a motion to dismiss, every possible inference

14   goes to the plaintiff's favor.  So if they have something,

15   anything that they can show in opposition that actually

16   supports their theory, that actually supports that there was

17   a fraud, it's not that difficult -- it shouldn't be that

18   difficult of a motion to defeat.

19           THE COURT:  No, but it wouldn't -- they wouldn't be

20   allowed to present that in the motion.  They wouldn't be able

21   to incorporate new material.  At that point, then, the

22   pleading, which is supposed to be the very measure of the

23   motion -- or the sufficiency of the pleading was supposed to

24   be the very measure of the motion, ends up becoming almost

25   beside the point, and it's a moving target as to what the

1  parties are now purporting to supplement the record with.

2  That's exactly the opposite of a motion to dismiss.

3          MR. PARLATORE:  Your Honor, I -- respectfully, I

4  disagree.  I think --

5          THE COURT:  You're free to do that.  Everybody's

6  free to do that.

7          MR. PARLATORE:  I think that when -- when they put

8  into the complaint due diligence materials, if they can

9  identify what -- what they incorporated by reference there

10  that supports their theory, it's not -- I think that the way

11  that this is being characterized is a much more intensive

12  analysis than is necessary at a 12(b)(6) stage.

13          THE COURT:  Wait.  I don't think so, though,

14  Mr. Parlatore given that you're the one that submitted -- I'm

15  going to conservatively say north of 300 pages of exhibits to

16  your Rule 12(b)(6) motion.

17          MR. PARLATORE:  Yes.

18          THE COURT:  How is it -- I mean, I assume you want

19  the Court to review these, to scrutinize those carefully

20  along the lines of, Judge, the Government hasn't told you the

21  entire story.

22          And I understand that.

23          My only point is I have some real concerns over

24  whether a Rule 12(b)(6) motion -- and you -- that's fair

25  advocacy.  But I have real concerns over whether a

1   Rule 12(b)(6) motion in any event would be the proper vehicle

2   to do that, but particularly where, as here, there is a

3   parallel criminal case.

4           MR. PARLATORE:  And my position there, Judge, is

5   that they chose to file this -- to file this suit

6   contemporaneous with the criminal case.  They also chose to

7   file an in rem civil forfeiture complaint, which they've

8   already -- which they've stated to the magistrate that they

9   are agreeing to oppose -- file an opposition to the motion to

10  dismiss.

11          So if they didn't want to litigate the basic

12  sufficiency of their pleading until after the criminal case,

13  why do they file it before the criminal -- at the inception

14  of the criminal case?  This is a decision that they made.

15  And at this point, Mr. Parmar has the right to challenge the

16  sufficiency of the pleadings against him, and he opposes the

17  Government's desire to let these insufficient pleadings just

18  hang out there for as long as it takes until the criminal

19  case is resolved.

20          THE COURT:  Okay.  All right.

21          Mr. Grippo, do you want to respond?

22          MR. GRIPPO:  Just very briefly, Your Honor.  The

23  motion to dismiss in this case, Your Honor, does not simply

24  challenge the sufficiency of the pleadings or test the due

25  diligence materials that are referenced in the complaint.  It

1   goes on to spin a counternarrative that includes the

2   principal victim of the case being the actual fraudster in

3   the case.  And Mr. -- Mr. Parmar is alleging not only that

4   the victim was not deceived, but that he actually knew about

5   the fraud and was the mastermind of it, and then engaged in

6   fraudulent bankruptcy.  And that's laid out in detail in the

7   paper.

8            THE COURT:  Yup.  I read it.

9            MR. GRIPPO:  And certainly there's nothing about

10  that in the SEC's complaint.  That's completely outside of

11  the four corners.

12           And, Your Honor, I would just note one other thing.

13  I know it's a different proceeding that the Court observed

14  that, given the amount of information Mr. Parmar has injected

15  into this motion record, that one course of action could be

16  converting the motion to a summary judgment motion.  That has

17  actually happened in a related bankruptcy proceeding --

18           THE COURT:  Right.

19           MR. GRIPPO:  -- the adversary proceeding.  And in

20  that case, Mr. Parmar made similar allegations in a

21  cross-claim, and there was a motion to dismiss the

22  cross-claim, and it panned out in a way that the court

23  eventually converted it to a summary judgment motion, and

24  Mr. Parmar withdrew or filed a motion to withdraw those

25  claims without prejudice based on his Fifth Amendment

 1  privilege, because it heated up to a point where it was in a

 2  summary judgment posture.  And this motion presents the same,

 3  you know, fact-sensitive issues.  And, you know, we think

 4  this would be heading in a similar direction if the Court

 5  didn't stay it now.

 6              THE COURT:  All right.

 7              I have carefully considered the parties' arguments,

 8  both in their briefing and today.  I have also very carefully

 9  reviewed the pending motion to dismiss the criminal case and

10  the complaint filed in this matter.

11              As I noted, this case certainly is different than

12  the Walsh matter.  In Walsh it was the defendants and not the

13  Government who made the motion to stay the civil case,

14  essentially arguing that requiring them to go forward and

15  engage in discovery would be tantamount to make the -- force

16  them to make the Hobbsian choice between their Fifth

17  Amendment privilege and engaging in civil discovery to defend

18  themselves in the matter.  The court identified a number of

19  areas in the civil discovery where -- that would pose

20  particularly acute problems for both the defendants -- and

21  for that matter, the Court -- in terms of navigating those

22  privilege issues.  So this case is different.

23              But nonetheless the factors that the Walsh court

24  articulated have come to be well accepted as nonexclusive

25  guiding posts for courts to consider in determining whether

|Hearing
|18-cv-09284, March 4, 2019

1    to stay pending civil litigation because of a pending

2    criminal matter.  And, as the Government notes, this case has

3    now been indicted.

4           Those factors, of course, include the extent to

5    which the issues in the criminal and civil case overlap.  In

6    this case, I think all parties agree, and I conclude that

7    there is very substantial overlap.  Both cases essentially

8    allege fraud both in terms of securities fraud and conspiracy

9    to commit wire fraud in the manner in which Mr. Parmar and

10   his co-defendants engaged in a variety of methods to

11   essentially give the appearance that their company was

12   capitalized and more profitable and had higher earnings

13   beyond that which was true in order to be able to engage in

14   the deal with the private investment firm.  And the manner in

15   which they are alleged to have done so substantially overlaps

16   between the criminal complaint and the civil complaint here.

17          In terms of the second Walsh factor, the status of

18   the case, including whether the defendants have been

19   indicted, in this case, the Government represents now -- and

20   I have no reason to doubt them -- that the matter has been

21   indicted.

22          Accordingly, the first two factors do favor a stay.

23          The third is the interests of, in this case, the

24   defendant as the party opposing the stay in proceeding

25   expeditiously weighed against the prejudice to -- caused by

1    any delay.  I think this factor certainly does not favor

2    Mr. Parmar.  I do understand his argument that he would like

3    to undergo at least a motion to dismiss in the civil case.

4    But I can't identify any specific prejudice that he would

5    suffer if that motion were to be delayed.  He would certainly

6    still have the opportunity, after the criminal case, to make

7    that very same argument.  This isn't a situation where he

8    risks losing in the event of a stay evidence to spoliation or

9    fading memories, because there's no party in this case who is

10   seeking to -- or opposing the stay based on the collection of

11   discovery or taking of discovery.  It's limited to the motion

12   to dismiss, a motion that could be made certainly at the

13   conclusion of the criminal case.

14            The private interests and burden on the parties

15   doesn't particularly, as far as I can see, apply here.

16            The interests of the Court -- this is particularly

17   significant here.  As I already established, I have real

18   concerns over, frankly, the viability of the defendant's

19   motion.  It includes -- it would be one thing, as I noted

20   earlier, if it were truly a motion to dismiss in terms of

21   taking the complaint at face value and the hallmark of any

22   Rule 12(b)(6), assuming for purposes of the motion, the

23   allegations set forth in the complaint are true.  That is the

24   core of a Rule 12(b)(6) motion; and for that matter, a

25   Rule 12(c) motion.

1          But that is not what the defense here proposes to

2    do.  The defense here proposes to do the opposite, and that

3    is to point out that the allegations in the complaint are not

4    true because the materials that the allegation -- or the

5    allegations of the complaint rely on were selectively quoted

6    by the -- by the SEC.  In a sense, then, the motion seeks to

7    challenge the accuracy or truthfulness of the assertions.

8          In that regard, I cannot find that the proposed

9    motion really is an appropriate Rule 12(b)(6) -- or for that

10   matter, Rule 12(c) -- motion at all.  It's much closer to a

11   Rule -- a summary judgment motion.  And in that context,

12   then, is considering matters outside of the pleadings.  That

13   in turn, if it were converted to a summary judgment motion --

14   and, of course, Judge Arleo would have the discretion to

15   refuse to consider matters outside the pleadings or to refuse

16   to consider the motion altogether in its current form.

17          But if the Court were to consider the motion and

18   rule on it as summary judgment, as Mr. Grippo pointed out or

19   the Government pointed out, that really would, then, risk

20   the -- run the risk of inconsistent judgments in parallel

21   cases where I've already characterized the allegations in

22   both as substantially -- or the factual and legal issues as

23   being substantially similar.

24          And for those reasons, I'm going to grant the

25   Government's application to stay.

```
 1              Look, frankly, Mr. Parlatore, if the defense wishes

 2   to come back and ask the Court to consider that for purposes

 3   of a motion that does not include hundreds of pages of

 4   exhibits and establishes or takes the complaint at face

 5   value, I'm happy to consider that at the appropriate time.

 6   But based on the motion to dismiss, Docket Entry 12, that was

 7   filed back in August, I cannot agree that the matter should

 8   proceed in terms of -- even in the limited purpose of the

 9   motion to dismiss.

10              So I'm going to grant the Government's application

11   to intervene and grant the Government's motion to stay

12   without prejudice to the defendant's right to be heard, if at

13   some point the defendant wishes to make a motion to dismiss

14   that is narrowly tailored to truly considering the four

15   corners of the complaint.

16              Anything else for the Government at this time or

17   the SEC?

18              MR. GRIPPO:  No, Your Honor.  Nothing further from

19   the Government.  Thank you.

20              MR. ENRIGHT:  Nothing further from the SEC.

21              THE COURT:  Mr. Parlatore, anything else for you,

22   sir?

23              MR. PARLATORE:  No.  Thank you, Judge.

24              THE COURT:  All right.  Thank you, everyone, we're

25   adjourned.
```

|Hearing
|18-cv-09284, March 4, 2019

1                    (Conclusion of proceedings at 12:30 P.M.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|Hearing
|18-cv-09284, March 4, 2019
|Certification

1                           Certification

2        I, SARA L. KERN, Transcriptionist, do hereby certify

3    that the 31 pages contained herein constitute a full, true,

4    and accurate transcript from the official electronic

5    recording of the proceedings had in the above-entitled

6    matter; that research was performed on the spelling of proper

7    names and utilizing the information provided, but that in

8    many cases the spellings were educated guesses; that the

9    transcript was prepared by me or under my direction and was

10   done to the best of my skill and ability.

11       I further certify that I am in no way related to any of

12   the parties hereto nor am I in any way interested in the

13   outcome hereof.

14

15

16

17

18   S/ *Sara L. Kern*                      30th of October, 2019

19   _____      _____
     Signature of Approved Transcriber            Date

20

21
     Sara L. Kern, CET**D-338
22   King Transcription Services
     3 South Corporate Drive, Suite 203
23   Riverdale, NJ  07457
     (973) 237-6080
24

25